[Cite as *State v. Bell*, 2011-Ohio-1965.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No.   95719

## STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

## JOAQUIN BELL

### DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-456145

**BEFORE:**    Boyle, P.J., Cooney, J., and Rocco, J.

**RELEASED AND JOURNALIZED:**    April 21, 2011

## ATTORNEY FOR APPELLANT

John T. Castele
1310 Rockefeller Building
614 West Superior Avenue
Cleveland, Ohio   44113

## ATTORNEYS FOR APPELLEE

William D. Mason
Cuyahoga County Prosecutor
BY:   Thorin O. Freeman
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, P.J.:

{¶ 1}  Defendant-appellant, Joaquin Bell, appeals the trial court's decision denying his oral motion to withdraw his plea and reclassifying him as a Tier III sex offender.   He raises two assignments of error for our review:

{¶ 2}  "[1.] The trial court erred in denying appellant's motion to withdraw his plea based upon the doctrine of res judicata.   The trial court

ought to have reviewed appellant's motion as a presentence motion to withdraw his guilty plea and reviewed the motion using a presentence standard of review as set forth in *State v. Xie.*

**{¶ 3}** "[2.] The trial court erred in reclassifying the appellant as a Tier III sexual offender."

**{¶ 4}** We find no merit to his first assignment of error, but sustain his second assignment of error. We affirm in part, reverse in part, and remand to the trial court.

## Procedural History

**{¶ 5}** In April 2005, Bell pleaded guilty to an amended indictment of attempted rape with notice of prior conviction and sexually violent predator specifications, and attempted kidnapping with the same specifications, as well as a sexual motivation specification. Bell further agreed to be labeled as a sexual predator.

**{¶ 6}** The trial court then sentenced Bell to 14 years in prison for the above convictions and notified Bell that postrelease control was part of his sentence, but failed to indicate for how long. Bell did not appeal his conviction or sentence.

**{¶ 7}** In August 2005, Bell moved to withdraw his guilty plea for several reasons, which the trial court denied. Bell appealed the trial court's

decision denying his motion to withdraw his plea. This court affirmed the trial court's decision in *State v. Bell*, 8th Dist. No. 87727, 2007-Ohio-3276.

{¶ 8} In June 2010, Bell moved to withdraw his plea again, this time arguing that his sentence was void because the trial court failed to notify him of his mandatory postrelease control at sentencing. He further moved the court to dismiss his case for "want of prosecution and delay in trial and sentencing," and he claimed that "his constitutional rights to a fast and speedy trial [had] been violated."

{¶ 9} The state responded with a brief in opposition to both Bell's motion to withdraw his plea and his motion to dismiss, and further moved the court to resentence Bell to properly advise him that he would be subject to five years of mandatory postrelease control upon his release from prison.

{¶ 10} On August 4, 2010, the trial court denied Bell's motion to withdraw his plea without a hearing because it found that res judicata barred it from considering it. But the trial court granted the state's request for a de novo sentencing hearing to properly notify Bell about postrelease control.

{¶ 11} Later that same month, the trial court held a de novo sentencing hearing, ultimately imposing the same sentence originally given, but with the proper notification of five years of mandatory postrelease control. At the resentencing hearing, Bell orally moved to withdraw his plea, again due to

the fact that he had not been informed prior to his plea that he would be subject to five years of mandatory postrelease control. The trial court denied his oral motion as well, and then reclassified Bell as a Tier III sex offender. It is from this judgment that Bell appeals.

## Motion to Withdraw Plea

{¶ 12} In his first assignment of error, Bell argues that because his sentence was void for inadequate postrelease-control notification, his motion to withdraw his plea was a presentence motion to withdraw and should have been reviewed under the "liberal standard" set forth in *State v. Xie* (1992), 62 Ohio St.3d 521, 584 N.E.2d 715 ("a presentence motion to withdraw a guilty plea should be freely and liberally granted").

{¶ 13} Crim.R. 32.1 states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Although "a presentence motion to withdraw a guilty plea should be freely and liberally granted," Crim.R. 32.1 requires a defendant making a postsentence motion to withdraw a plea to demonstrate manifest injustice because it is designed "to discourage a defendant from pleading guilty to test the weight of potential reprisal, and later withdraw the plea if the sentence was unexpectedly

severe." *State v. Caraballo* (1985), 17 Ohio St.3d 66, 67, 477 N.E.2d 627, citing *State v. Peterseim* (1980), 68 Ohio App.2d 211, 213, 428 N.E.2d 863.

{¶ 14} In support of his argument that his Crim.R. 32.1 motion was reviewable as a presentence motion, Bell cites the Ohio Supreme Court's 2009 decision in *State v. Boswell*, 112 Ohio St.3d 574, 2009-Ohio-1577, 906 N.E.2d 422. In *Boswell*, the Supreme Court held that "[a] motion to withdraw a plea of guilty *** made by a defendant who has been given a void sentence must be considered as a presentence motion under Crim.R. 32.1." Id. at the syllabus. The Supreme Court based its holding in *Boswell* on the principles set forth in *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961.

{¶ 15} In *Bezak*, the Supreme Court had held at the syllabus that "[w]hen a defendant is convicted of or pleads guilty to one or more offenses and postrelease control is not properly included in a sentence for a particular offense, the sentence for that offense is void. The offender is entitled to a new sentencing hearing for that particular offense." The Supreme Court reached that holding in large part because "the effect of vacating the trial court's original sentence is to place the parties in the same place as if there had been no sentence." *Bezak* at ¶13, citing *Romito v. Maxwell* (1967), 10 Ohio St.2d 266, 267-268, 227 N.E.2d 223.

{¶ 16} But the Ohio Supreme Court recently revisited the law underlying its decision in *Bezak*. See *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332. The Supreme Court noted that *Bezak* had relied in part on cases "inapposite to *Bezak*," that had "presented quintessential jurisdictional questions," rather than "statutory sentencing mandates." *Fischer* at ¶14. Specifically, the *Fischer* court explained that in *Bezak*, it had "relied heavily on [*Romito*, 10 Ohio St.2d 266] for the proposition that the effect of a void judgment is that the judgment is a nullity, and the parties are in the same position as if there had been no judgment." *Fischer* at ¶12, citing *Bezak* at ¶12-13. The *Fischer* court went on to explain:

{¶ 17} "The court in *Romito* supported that conclusion by relying on *Tari v. State* (1927), 117 Ohio St. 481, 159 N.E. 594, and *Hill v. Hill* (1945), 299 Ky. 351, 185 S.W.2d 245. Though different from each other, both *Tari* and *Hill* presented quintessential jurisdictional questions. Thus, *Romito* represents the historic, narrow view of void judgments, which is limited to the class of cases in which jurisdiction, rather than statutory sentencing mandates, is implicated. See *State v. Holcomb*, 184 Ohio App.3d 577, 2009-Ohio-3187, 921 N.E.2d 1077, ¶4-7 (noting early Ohio Supreme Court cases treating sentences that did not conform to mandatory prison terms as voidable rather than void)." *Fischer* at ¶14.

{¶ 18} Although the Supreme Court ultimately upheld the first sentence of the *Bezak* syllabus that held "[w]hen a defendant is convicted of or pleads guilty to one or more offenses and postrelease control is not properly included in a sentence for a particular offense, the sentence for that offense is void," it added the "proviso that only the offending portion of the sentence is subject to review and correction." *Fischer* at ¶27.

{¶ 19} The Court then noted that the second sentence of the *Bezak* syllabus, which held "[t]he offender is entitled to a new sentencing hearing for that particular offense," was "ill-considered." *Fischer* at ¶28. The *Fischer* court modified that second sentence and held that "[t]he new sentencing hearing to which an offender is entitled under *State v. Bezak* is limited to proper imposition of postrelease control." *Fischer* at paragraph two of the syllabus.

{¶ 20} In *Boswell*, the Supreme Court had relied heavily on *Bezak* to conclude that "[a] motion to withdraw a plea of guilty or no contest made by a defendant who has been given a void sentence must be considered as a presentence motion under Crim.R. 32.1." *Boswell* at the syllabus. Specifically, in *Boswell*, the Supreme Court had relied on the *exact* reasoning from *Bezak* that the Supreme Court recently revisited in *Fischer*, i.e., "[b]ecause a sentence that does not conform to statutory mandates requiring

the imposition of postrelease control is a nullity and void, it must be vacated. The effect of vacating the sentence places the parties in the same position they would have been in had there been no sentence." *Boswell* at ¶8, citing *State v. Simpkins*, 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568, ¶22*, citing *Bezak* at ¶13. Considering that exact reasoning from *Bezak* (which the Supreme Court had obtained from *Romito*, the 1967 habeas case), the Supreme Court in *Boswell* then concluded:

{¶ 21} "A motion to withdraw a plea of guilty or no contest made by a defendant who has been given a void sentence *must therefore* be considered as a presentence motion under Crim.R. 32.1." The court went on to explain that "[a]lthough such a defendant has in fact been through a sentencing hearing, the trial judge acted without authority in imposing the sentence. Crim.R. 32.1 requires a defendant making a postsentence motion to withdraw a plea to demonstrate manifest injustice because it is designed 'to discourage a defendant from pleading guilty to test the weight of potential reprisal, and later withdraw the plea if the sentence was unexpectedly severe.' *** This logic does not fully apply where the reprisal itself was unlawful." (Citations omitted.) *Boswell* at ¶9.

{¶ 22} Thus, after *Fischer*, when a defendant receives a sentence that does not properly include postrelease control, the defendant's entire sentence

is no longer vacated; rather, just the "offending portion of the sentence is subject to review and correction." *Fischer* at ¶27. The defendant does not have to be put in the same "position [he or she] would have been in had there been no sentence." *Bezak* at ¶13. It logically follows then that because a defendant's entire sentence is not null and void, but just the offending part, that a Crim.R. 32.1 motion to withdraw a plea filed after a defendant has been sentenced —without the proper postrelease control — is a postsentence motion that must meet the stricter manifest injustice standard. See, also, *State v. Christie*, 3d Dist. No. 4-10-04, 2011-Ohio-520; *State v. Thomas*, 1st Dist. Nos. C-100411 and C-100412, 2011-Ohio-1331 (both cases reaching the same result as we do regarding this issue).

{¶ 23} But here, we need not even get to the manifest injustice standard because we conclude that Bell's motion to withdraw his plea is barred by res judicata.

{¶ 24} Although in *Boswell*, the Supreme Court had declined to address the state's res judicata issue because the state failed to raise it properly, the Court did address res judicata in *Fischer*. In *Fischer*, the Supreme Court made clear that "[a]lthough the doctrine of res judicata does not preclude review of a void sentence, res judicata still applies to other aspects of the

merits of a conviction, including the determination of guilt and the lawful elements of the ensuing sentence." Id. at paragraph three of the syllabus.

**{¶ 25}** Bell moved to withdraw his plea in a written motion on June 3, 2010. The trial court denied Bell's motion on August 4, 2010. Bell did not appeal this order. The only judgment identified in and attached to the notice of appeal was the trial court's August 20, 2010 sentencing entry.

**{¶ 26}** Nonetheless, at his resentencing hearing, Bell orally moved to withdraw his plea — again for the same reasons he raised in his written motion, i.e., that the trial court failed to inform him at his plea hearing of the maximum penalty he would receive regarding postrelease control. Specifically, Bell argued that he would not have entered the plea had he known that he would be subject to five years of mandatory postrelease control upon his release from prison. The trial court denied Bell's oral request as well.

**{¶ 27}** Even before the Supreme Court made clear in *Fischer* that res judicata still applied, this court had already determined that same conclusion in light of the fact that the Supreme Court only declined to address res judicata in *Boswell* due to a procedural error. See *State v. Fountain*, 8th Dist. Nos. 92772 and 92874, 2010-Ohio-1202. In *Fountain*, the appellant had pleaded guilty and was sentenced in 2002. At that time, the trial court

advised him that he "may" be subject to postrelease control upon his release from prison. On September 11, 2008, Fountain filed a pro se motion to correct a void sentence on the basis that he was not properly informed of postrelease control. On November 26, 2008, before he was resentenced, Fountain filed a pro se motion to withdraw his guilty plea.

{¶ 28} The trial court conducted a hearing on both motions in January 2009. Although the trial court granted Fountain's motion to correct his sentence, it considered his motion to withdraw his guilty plea and denied it. Fountain's defense counsel argued that Fountain may not have pleaded guilty had he known of the mandatory nature of postrelease control. The trial court reviewed the transcript of the plea hearing and discredited Fountain's argument. On appeal, he argued that the trial court erred in denying his motion to withdraw his plea. *Fountain* at ¶4.

{¶ 29} In upholding the trial court's judgment, this court explained:

{¶ 30} "It is well recognized that the doctrine of res judicata bars claims that were raised or could have been raised on direct appeal. *State v. Davis*, 119 Ohio St.3d 422, 2008-Ohio-4608, 894 N.E.2d 1221. Consistent therewith, this court has consistently recognized that the doctrine of res judicata bars all claims raised in a Crim.R. 32.1 motion that were raised or could have been raised in a prior proceeding, including a direct appeal. *State*

*v. McGee*, 8th Dist. No. 91638, 2009-Ohio-3374; *State v. Pickens*, 8th Dist. No. 91924, 2009-Ohio-1791; *State v. Gaston*, 8th Dist. No. 82628, 2003-Ohio-5825; see, also, *State v. Coats*, 3d Dist. Nos. 10-09-04 and 10-09-05, 2009-Ohio-3534. Indeed, the right to withdraw a plea is not absolute. *Coats*, supra. Applying these same principles, we find that the application of res judicata to a motion to withdraw is not impacted by a void sentence. *Coats*, supra; *McGee*, supra." *Fountain* at ¶9.

{¶ 31} In *Fountain*, we further found *Newman v. Wilson* (Apr. 30, 2009), N.D.Ohio No. 5:08 CV 483, to be instructive. Id. at ¶10. *Newman* was "a case in which a motion to withdraw guilty plea was filed after the sentence was vacated and the case remanded for resentencing, wherein the court stated as follows: 'The doctrine of res judicata bars further litigation in a criminal case of issues which were raised previously or could have been raised previously in a direct appeal. *State v. Leek* [June 21, 2000], 8th Dist. No. 74338, citing *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus. Accordingly, [the defendant's] failure to properly raise the plea issues in [a] direct appeal *** bars *** later consideration. *** In this case, *** res judicata would have served to bar further review of petitioner's claims of involuntary guilty plea.'" *Fountain* at ¶10, quoting *Newman* at 6.

{¶ 32} The appellant in *Fountain* raised the exact issue that Bell is raising here.  Fountain argued "that his plea was not voluntary because the trial court misinformed him at his plea hearing that he *may receive*, rather than that he would receive, postrelease control."  (Emphasis added.)  Id. at ¶11.  We rejected that argument, however, because "Fountain could have raised that issue on direct appeal."   Id.   Therefore, we concluded that Fountain's motion was barred by res judicata, and we overruled his assigned errors pertaining to his motion to withdraw.

{¶ 33} We conclude the same in the present case.  The transcript from Bell's plea hearing shows that although the trial court told him that he would receive mandatory postrelease control, it did not tell him that it would be for five years.  Bell could have raised this issue in a direct appeal, which he failed to file, or at least in his first motion to withdraw his plea filed three months after his conviction, in 2005.

{¶ 34} Bell's first assignment of error is overruled.

<u>Sex Offender Status</u>

{¶ 35} In his second assignment of error, Bell argues that the trial court erred in reclassifying him as a Tier III offender under the Adam Walsh Act. He requests that his Tier III classification be removed and his sexual

predator status be reinstated. The prosecutor concedes this issue, and we agree.

{¶ 36} In *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, the Ohio Supreme Court struck down a portion of Ohio's Adam Walsh Act dealing with the reclassification of sexual offenders by the executive branch as a violation of a separation of powers; specifically those provisions that required the attorney general to reclassify sexual offenders who were previously classified by court order under former law. Id. at paragraphs two and three of the syllabus. According to the state, at the time of the resentencing hearing, it believed that because Bell was being resentenced in a de novo sentencing hearing, it would be the trial court reclassifying Bell, not the executive branch, and therefore there would be no separation-of-powers issue. But now the state claims that after *Fischer*, Bell was not entitled to a de novo sentencing hearing and, thus, the trial court could not reclassify Bell.

{¶ 37} But we conclude that the trial court could not have reclassified Bell even before *Fischer*. As the Second Appellate District explained:

{¶ 38} "[W]here resentencing is required due to an error in the imposition of post-release control, the trial court is not authorized to address a defendant's previously-imposed sex offender classification. *State v. Gibson*,

2d Dist. No. 2009 CA 47, 2010-Ohio-3447. In *Gibson*, the defendant was sentenced for rape in 2001, prior to the enactment of the Adam Walsh Act, but he challenged the validity of his sentence to post-release control after the Act was in effect. We held that, although a defendant is informed of his sex offender classification at sentencing and it is included in the trial court's judgment entry, his classification 'is a separate and distinct proceeding, which is not affected by the validity of his sentencing.' Id. at ¶22. Thus, we concluded that the validity of a sentence, including whether the sentence was void because post-release control had not been properly imposed, 'would not affect the validity of [a defendant's] classification as a sexual predator.' Id. at ¶28. [The defendant's] classification as a sexually oriented offender was likewise unaffected by the error that rendered the post-release control portion of his sentence void." (Internal citations omitted.) *State v. Gimbrone*, 2d Dist. No. 23810, 2011-Ohio-632, ¶12.

{¶ 39} In *Gimbrone*, the Second District went on to conclude that the Ohio Supreme Court's decision in *Fischer* only strengthened its previous determination because *Fischer* "narrowed the scope of resentencing required to correct an improperly-imposed term of post-release control." Id. at ¶14. We agree.

**{¶ 40}** Thus, the trial court erred when it reclassified Bell as a Tier III sex offender under the Adam Walsh Act. Bell's prior classification must be reinstated.

Judgment affirmed in part and reversed in part. **Case remanded for the trial court to reinstate Bell's prior classification as a sexual predator.**

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
KENNETH A. ROCCO, J., CONCUR